OPINION.
{¶ 1} Roxanne M. Cook ("appellant") appeals the March 18, 2002, judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, granting Herschel W. Seitz's ("appellee") motion for a change of custody of their daughter, Alexis Seitz. For the following reasons, we affirm the decision below.
 {¶ 2} Alexis Seitz was born to appellant and appellee on December 7, 1994. Appellant and appellee have never been married and both resided in Trumbull County at the time of Alexis' birth. Subsequent court proceedings established appellee's paternity of Alexis, designated appellant as residential parent and legal custodian of Alexis, imposed child support on appellee, and granted appellee visitation rights.
 {¶ 3} On February 2, 1999, appellee filed a motion for change of custody requesting that he be designated Alexis' residential parent. On February 9, 1999, appellee filed an amended motion adding a request that appellant be found in contempt for denying him visitation. On February 25, 1999, appellee filed a second amended motion also seeking to have appellant held in contempt. In response to appellee's motions, the court appointed a guardian ad litem for Alexis and ordered the parties to undergo psychological evaluations. The guardian ad litem filed her report with the court on April 22, 1999, and the psychologist submitted his report on July 21, 1999.
 {¶ 4} Thereafter, neither party took any action until January 19, 2001, when appellant filed a motion to have appellee held in contempt for failing to pay child support. Appellee responded on February 2, 2001, with a motion to hold appellant in contempt for failing to allow him visitation and requesting that a hearing be set on his February 2, 1999, motion to change custody. Subsequently, the court ordered that appellee's contempt motion be held in abeyance and that the missed visitation be made up, held a pre-trial on the change of custody motion, and continued the hearing on the merits of appellee's motion due to appellant's illness. The hearing on appellee's motion was continued a second time on August 23, 2001, for reasons not apparent from the face of the record.
 {¶ 5} On August 29, 2001, appellant filed a notice of relocation with the court stating her intention to relocate her residence from Boardman to Dublin, Ohio, which is about three hours from Boardman by car. On August 31, 2001, appellee filed another motion for custody of Alexis followed by another motion for contempt on September 26, 2001, for denying him visitation. Appellant relocated with Alexis to Dublin during the first week of September and enrolled her for first grade in the Dublin school system.
 {¶ 6} On October 12, 2001, the guardian ad litem filed her second report with the court as requested at the pre-trial held on appellee's motion in March 2001. The hearing on appellee's motion commenced on October 19, 2001, and was concluded during a second session held on January 15, 2002. On March 3, 2002, the court made its ruling granting appellee custody of Alexis. This timely appeal follows.
 {¶ 7} Appellant raises the following assignments of error:
 {¶ 8} "[1.] The Trial Court committed error prejudicial to the Appellant in failing to dismiss the change of custody motion(s) filed by the Appellee due to Appellee's failure to obtain service of process upon Appellant.
 {¶ 9} "[2.] The Trial Court committed error prejudicial to the Appellant in finding and concluding that she had failed to give the required notice of intent to relocate prior to her move to Dublin, Ohio.
 {¶ 10} "[3.] The Trial Court committed error prejudicial to the Appellant in finding and concluding that her move to Dublin, Ohio, was done just to frustrate Appellee-Father's ability to exercise his companionship rights and to interfere with his pending custody motion, which was against the manifest weight of the evidence.
 {¶ 11} "[4.] The Trial Court committed error prejudicial to the Appellant in going forward with the hearing on Appellee's Motion for Custody on October 19, 2001, as the appointed Guardian ad Litem, an attorney of record in the case, was not present for the hearing.
 {¶ 12} "[5.] The Trial Court committed error prejudicial to the Appellant in finding and concluding that the evidence supported Appellee's claim of a change of circumstances, and that a change of custody was in the best interest of the child.
 {¶ 13} "[6.] The Trial Court committed error prejudicial to the Appellant by accepting the Report and Recommendation from the Guardian adLitem who had so imperfectly performed her duties that her opinion should have been rejected and accorded no weight.
 {¶ 14} "[7.] The Trial Court committed error prejudicial to the Appellant in finding and concluding that Appellee had substantially complied with the order to pay child support, which was against the manifest weight of the evidence."
 {¶ 15} In her first assignment of error, appellant argues that appellee's February 2, 1999, August 31, 2001, and September 26, 2001 motions were not properly served upon appellant.
 {¶ 16} Without personal jurisdiction over appellant, the lower court was without authority to render judgment against her. Maryhew v.Yova (1984), 11 Ohio St.3d 154, 156. Pursuant to Civ.R. 75(J), appellee was required to obtain service of process over appellant in order to invoke the court's continuing jurisdiction to hear his motion for change of custody.
 {¶ 17} In the present case, appellee's original February 2, 1999, motion for change of custody requested that service be made upon appellant by certified mail at her residence in Cortland, Ohio. The court's docket states that certified mail was sent to appellant on February 10, 1999, and was returned endorsed by her on February 17, 1999. Every subsequent action taken by the court in regards to Alexis' custody refers back to the original motion filed on February 2, 1999. Once the court's continuing jurisdiction was properly invoked, appellee was not required to obtain personal service again every time he amended or renewed his original request for custody of Alexis. Thereafter, appellee was able to serve subsequent pleadings and motions by mail as described in Civ.R. 5(B).[1]
 {¶ 18} Moreover, we find that appellant has voluntarily waived the defense of lack of jurisdiction and submitted herself to the court's jurisdiction by arguing the merits of appellee's motion. Under Civ.R. 12(H)(1) the defense of lack of jurisdiction, insufficiency of process, and insufficiency of service of process is waived "if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof." In the present case, appellant did not raise the issue of insufficiency of service until March 21, 2002, after the court had already issued its ruling on the merits of appellee's motion. Nelsonv. Szykulski (Mar. 12, 1999), 11th Dist. No. 97-T-0219, 1999 Ohio App. LEXIS 940, at *9; Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 780. Appellant's first assignment of error is without merit.
 {¶ 19} In her second assignment of error, appellant argues that the magistrate's finding that appellant had moved Alexis to Dublin "without advance notice" is unsupported by the evidence of record and constitutes prejudicial error. Appellant maintains that by filing her notice of relocation in accordance with R.C. 3109.051(G)(1) prior to moving Alexis, she provided advance notice. We disagree.
 {¶ 20} The standard of review when a party challenges the factual findings of the trier of fact is as follows: "A reviewing court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. State ex rel Shady Acres Nursing Home,Inc. v. Rhodes (1983), 7 Ohio St.3d 7. Where the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by an appellate court as being against the manifest weight of the evidence. C.E. Morris Co. v. Folley Construction Co. (1978),54 Ohio St.2d 279." Durso v. Durso (Dec. 4, 1987), 11th App. No. 3832, 1987 Ohio App. LEXIS 9917, at *6-*7.
 {¶ 21} The purpose of requiring the custodial parent to give notice of the intent to relocate is to provide the court and the non-custodial parent the opportunity to schedule a hearing "to determine whether it is in the best interest of the child to revise the parenting time schedule for the child." R.C. 3109.051(G)(1). "Advance notice" entails more than formally notifying the court of the intent to relocate. The failure to inform the non-custodial parent in advance of the custodial parent's intent to relocate is also a factor that bears on consideration of the child's best interests and on the custodial parent's respect for the rights of the non-custodial parent.
 {¶ 22} The magistrate's remarks that appellant moved "without advance notice" and that her relocation was "unannounced" do not refer to whether appellant filed a notice of relocation with the court prior to relocating. These comments refer to the fact that appellant's decision to relocate Alexis was unilaterally made without any discussion or consultation with appellee. The court's position on the matter is obvious from the hearing transcript: "It really doesn't matter [when appellee learned of appellant's intent to relocate]. I will tell you the truth. What really matters, if you want to know, is that [appellee] and [appellant] had no discussions about the move to Columbus." On this point, we agree with the magistrate.
 {¶ 23} Appellant filed her notice of relocation on August 29, 2001, less than five days before actually relocating to Dublin with Alexis on September 2nd or 3rd according to her own testimony. By filing notice only a few days before relocating, appellant frustrated the purposes for giving notice discussed above. As a practical matter, the fact of appellant's relocation with Alexis was a fait accompli to which neither the court nor appellee could have timely responded. Appellant then chides the court and appellee for failing to schedule a hearing on the proposed relocation as allowed by R.C. 3109.051(G)(1). Appellee filed a motion for immediate custody on August 31, 2001, two days after appellant filed notice. The court had already scheduled, and twice rescheduled, a hearing on appellee's prior motion for custody on October 19, 2001. Given these circumstances, neither appellee, nor the trial court can be blamed for not acting on appellant's notice of relocation. Appellant's second assignment of error is without merit.[2]
 {¶ 24} In the seventh assignment of error, appellant argues that the magistrate's finding that appellee "has substantially complied with the support orders of this Court" is against the manifest weight of the evidence. Appellant cites the fact that at the time of the January 15, 2002, hearing, appellee was $1,982.13 in arrears. Again, we disagree.
 {¶ 25} The magistrate's finding that appellee had substantially complied with the court's support orders is a fair characterization of the evidence. That evidence shows that appellee has held the same job since 1999, and has consistently paid his support obligation through the county support enforcement agency. The arrearages accrued during periods when appellee was laid off. Appellee is paying his current support obligation and working toward reducing the arrearage by regular deductions from his paycheck. Appellant's seventh assignment of error is without merit.
 {¶ 26} Appellant argues in her fourth assignment of error that the court erred by going forward with the hearing on October 19, 2001, without Alexis' guardian ad litem being present. Appellant cites no case or other authority for this proposition.
 {¶ 27} The rule has emerged that a court errs when it receives testimony in the form of a guardian ad litem's report, but does not allow the parties to cross-examine the guardian ad litem regarding the contents of their report. See In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, syllabus ("In a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation."). If the guardian ad litem has submitted a report and recommendation regarding custody prior to the hearing, there is no reason for the guardian ad litem to be present at the custody hearing beyond that of being cross-examined regarding the report.
 {¶ 28} In the present case, the guardian ad litem had submitted two reports in advance of the custody hearings. Although the guardian ad litem did not testify at the October 19, 2001, hearing, she was present at the January 15, 2002, hearing where she gave testimony regarding her report and was cross-examined by both parties. Her testimony was based on her prior investigation of the matter and not on testimony given at the first hearing. We fail to see how appellant was prejudiced by the guardian ad litem's absence from the first hearing. Appellant's fourth assignment of error is without merit.
 {¶ 29} In her sixth assignment of error, appellant argues that the court erred by accepting the report and recommendation of the guardian ad litem on the grounds that the guardian had "imperfectly performed her duties." As another court has remarked, it is not immediately apparent that a custodial disposition should be reversed on the basis of arguably ineffective service by the guardian ad litem. In re Pryor (1993),86 Ohio App.3d 327, 338. We will construe appellant's argument to be that the guardian ad litem had performed such an inadequate investigation into Alexis' best interests so that the recommendation in her report that appellee be given custody of Alexis lacked support.
 {¶ 30} In an action regarding parental rights and responsibilities, "[p]rior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent." R.C. 3109.04(C); see also Civ.R. 75(D) (authorizing the court to order an investigation on the filing of a motion for the modification of a decree allocating parental rights and responsibilities). "A guardian ad litem's duties include investigating one or more such areas and delivering a report and recommendation regarding the child's best interests." Webb v. Lane (Mar. 15, 2000), 4th Dist. No. 99CA12, 2000 Ohio App. LEXIS 1077, at *6, citingIn re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232. A guardian ad litem has been described as performing a dual role of 1) advocating for the child's interests and 2) serving as a fact finder for the court. Stuckey, Guardians ad Litem as Surrogate Parents: Implications for Role Definition and Confidentiality (1996), 64 Fordham L.Rev. 1785, 1787.
 {¶ 31} In the present case, the guardian ad litem filed two reports with the court. The initial report was filed on April 22, 1999, and a supplemental report was filed on October 12, 2001. In both reports the guardian ad litem recommended that appellee be given custody of Alexis.
 {¶ 32} Appellant points out several arguable deficiencies in the guardian ad litem's performance: the guardian was confused whether appellee's February 2, 1999, motion was an original filing to determine custody or a motion to change custody; the guardian had failed to file her second report by the scheduled August 23, 2001, hearing date; the guardian failed to be present for the October 19, 2001, hearing; the guardian failed to review Alexis' medical records; the guardian failed to inspect appellant's home in Dublin. We do not find that these alleged deficiencies undermine the guardian ad litem's recommendation that it was in Alexis' best interest that appellee be given custody.
 {¶ 33} In preparing her second report, the guardian ad litem interviewed appellant, appellee, Alexis, Alexis' maternal grandmother, and appellee's girlfriend who lives with him. The guardian ad litem also visited appellee's home. Based on this investigation, the guardian ad litem recommended that appellee be given custody as he "remains the more stable of the two." The guardian ad litem also found that the maternal grandmother had played a significant part in raising Alexis and that, by giving custody to appellee, she could continue to exert a positive influence in Alexis' life because of her geographic proximity to appellee. The guardian also testified that appellee would be more likely to facilitate visitation between the parties and the maternal grandmother.
 {¶ 34} We conclude that the guardian ad litem's investigation of this matter, based on interviews with persons who may significantly affect Alexis' best interests, was adequate to support these conclusions. Appellant's complaints that the guardian ad litem's report failed to demonstrate that there had been a change in circumstances or that Alexis was in danger of immediate physical harm misconstrues the role of the guardian ad litem. That role is to advocate for the child's best interests, not to develop the case for the parties. In re Alfrey, 2nd Dist. No. 01CA0083, 2003-Ohio-608, at ¶ 23 ("The guardian ad litem is but an officer of the court, one not aligned with any party on the legal issues presented."). Appellant's sixth assignment of error is without merit.
 {¶ 35} In appellant's third and fifth assignments of error, she argues that the evidence does not support the court's finding that she relocated to Dublin in order to frustrate the exercise of appellee's visitation rights, that a change of circumstances had occurred, or that a change of custody was in Alexis' best interests. Because all these arguments essentially challenge the court's decision to transfer custody of Alexis to appellee, they will be treated together.
 {¶ 36} Interpreting R.C. 3109.04(E)(1)(a), which governs motions to modify a prior decrees allocating parental rights and responsibilities, this court has stated that "in order for a trial court to modify a prior child custody decree, the party requesting the modification must demonstrate the following: (1) a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree; (2) the requested modification is necessary to serve the best interest of the child; and (3) one of the three scenarios described in R.C. 3109.04(E)(1)(a)(i) through (iii) is applicable." Pickett v. Pickett, 11th Dist. No. 2001-L-136, 2002-Ohio-3128, at ¶ 15 (citation omitted).
 {¶ 37} In determining whether a change in circumstances has occurred sufficient to support a change in custody, the Ohio Supreme Court has stated that, "a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support a change." Davisv. Flickinger, 77 Ohio St.3d 415, 1997-Ohio-260, paragraph two of the syllabus. "Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion." Id. at paragraph one of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 38} It is settled that the relocation of the residential parent, in and of itself, does not constitute a change in circumstances as to support a motion for change of custody. Rohrbaugh v. Rohrbaugh
(2000), 136 Ohio App.3d 599, 604; Schiavone v. Antonelli (Dec. 10, 1993), 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, at *12;Vincenzo v. Vincenzo (1982), 2 Ohio App.3d 307, 308-309. It is equally settled, however, that a court may consider any attendant circumstances surrounding a residential parent's relocation that affect the child's welfare in determining whether a change in circumstances has occurred.Green v. Green (Mar. 31, 1998), 11th Dist. No. 96-L-145, 1998 Ohio App. LEXIS 1434, at *8 ("Although a relocation, by itself, is not sufficient to be considered a change of circumstances, it is certainly a factor in such a determination."); Hongosh v. Hongosh (Sept. 11, 1998), 11th Dist. Nos. 97-L-113 and 97-L-263, 1998 Ohio App. LEXIS 4249, at *20 (same). One circumstance in particular that courts have found significant in this situation is a parent's decision to unilaterally move a child or unilaterally make other important decisions regarding a child's welfare without consulting the other parent. Kubin v. Kubin (2000),140 Ohio App.3d 367, 372-374; Green, supra, at *8-*10.
 {¶ 39} In this context, this court has stated, "that a finding of change in circumstances would be justifiable if it were established that the primary motive for the move was to restrict the non-custodial parent's ability to visit the children. This court is fully cognizant of the fact that in many instances, this is the sole motivation behind a move by a custodial parent. * * * Such actions would not only demonstrate a change in circumstances, but would also indicate that the best interest of the child would be better served if custody were modified."Schiavone, supra, at *12-*13; Headley v. Headley (Sept. 29, 2000), 11th Dist. No. 99-A-0049, 2000 Ohio App. LEXIS 4556, at *12, quoting Holm,83 Ohio App.3d at 773 ("a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody").
 {¶ 40} In the present case, the magistrate found that appellant had relocated "for reasons other than those she testified to in court" and that appellant's "reason for this unannounced relocation was to frustrate father's ability to exercise his companionship rights and further to interfere with this custody motion which was and still is pending before this Court."
 {¶ 41} Appellant argued that she had moved to the Columbus area to be able to live with the man she is engaged to marry, because she had obtained better employment for more pay, and because of the quality of the schools in Dublin. The record demonstrates that the man appellant moved to Dublin to be with was still the defendant in a divorce action at the time of the move; that appellant has held three different jobs in the three months after her move to Dublin; that appellant is only making a dollar more an hour than she was in Trumbull County; and that appellant did not consult with appellee at all about the consequences the move would have on Alexis. The record is devoid of evidence regarding the relative merits of the Dublin and Boardman school districts. Moreover, the record shows that there has been an ongoing history of visitation problems between appellant and appellee, both before and after appellant's relocation. Appellant expressed the attitude at the hearing that appellee should allow Alexis to remain in Dublin during his scheduled visitation with Alexis in recognition of the fact that Alexis' friends and school are now located in Dublin.
 {¶ 42} We acknowledge that the testimony on many of these issues is conflicting and could easily be construed to support a conclusion different from the one made by the magistrate. Such is the inevitable nature of domestic disputes. Since the record contains some competent, credible evidence supporting the magistrate's conclusion regarding the mother's motives for relocating, we cannot say that this decision was against the weight of the evidence.
 {¶ 43} The court below also found that the appellant's "change of geographical location coupled with Alexis's now entering school age [the first grade] constitutes a change in circumstances. Especially since this change virtually eliminates the stability in Alexis' life and certainly does not serve her best interests." The court was particularly troubled by the fact that appellant's relocation disrupted the positive influence that Alexis' maternal grandmother was having in her life.[3] The court found that appellee has substantially complied with his support obligations and that appellant often denied visitation.
 {¶ 44} The record before us supports the court's conclusions as to the change in circumstances and Alexis' best interests. Appellant's unannounced relocation to the Columbus area, coupled with the history of visitation problems between the parties and appellant's dubious motivation for relocating, supports the conclusion that a change in circumstances has occurred. Moreover, the lower court's decision regarding Alexis' best interests is based on many of the statutorily enunciated factors that a court should consider when making this determination, including Alexis' interaction with persons (the maternal grandmother) who significantly affect her best interest; the parent most likely to honor and facilitate visitation rights (the father); whether the obligor-parent is current with his support obligations; and whether the residential parent has continuously and willfully denied visitation. R.C. 3109.04(F)(1)(c), (f), (g), and (i). Accordingly, appellant's third and fifth assignments of error are without merit.
 {¶ 45} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] Appellant does not claim, nor does the record reflect, that appellant failed to receive actual notice of any pleading or motion filed by appellee in this case.
[2] We discuss appellant's notice of relocation here only in regards to appellant's argument that the trial court erred in finding that appellant failed to give the required notice. We emphasize that the failure to give the required statutory notice or to discuss relocating with the child's non-custodial parent, alone, is not a valid basis for granting a motion to change custody. As discussed below, appellant's failure to discuss with appellee her intention to relocate constitutes an attendant circumstance, bearing on appellant's motivation for relocating, that a court may consider in deciding a motion for change of custody.
[3] We note that the court's concern "that mother has even frustrated visits with maternal grandmother" may only be considered after it has been determined that a change in circumstances has occurred. The maternal grandmother has no right to visitation with Alexis. Therefore, any motivation on the appellant's part to frustrate visitation with the maternal grandmother has no bearing on the question of whether appellant's relocation constitutes a change of circumstances. Cf. Pecekv. Giffin (Apr. 12, 2002), 11th Dist. No. 2000-L-185, 2002-Ohio-1684, 2002 Ohio App. LEXIS 1670, at *5-*6 (a parent's right to custody of his minor children is paramount to that of other family members). The court may consider Alexis' relationship with her maternal grandmother as a factor in determining Alexis' best interests. R.C. 3109.04(F)(1)(c) ("The child's interaction and relationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest.").