OPINION
{¶ 1} In the instant appeal, submitted on the record and the briefs of the parties, defendant-appellant, Donald T. Sampson, appeals the April 14, 2005 judgment entry of the Portage County Court of Common Pleas, Domestic Relations Division, overruling his objections to the magistrate's decision, and denying his motion for reallocation of parental rights and responsibilities. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} As with many cases involving divorce and custody of children, this case involves a rather long and complicated procedural history. A summary of the relevant events follows.
 {¶ 3} Sampson and plaintiff-appellee, Ilene K. Weisberg, were married on December 21, 1989 in Deerfield, Ohio. Two children, Hannah, d.o.b. October 25, 1991, and Donald ("Donny"), d.o.b. December 31, 1994, were born as issue of the marriage.
 {¶ 4} On May 16, 2001, Weisberg filed a complaint of divorce against Sampson.
 {¶ 5} On July 24, 2002, following a hearing, the court granted a decree of divorce on the grounds of incompatibility. A Separation Agreement was incorporated into the decree, the relevant provisions of which designated Weisberg as the primary residential parent and granted Sampson "liberal rights of companionship with the minor children which will not fall below the Standard Orders of Visitation." However, the Separation Agreement further provided that "[e]ach parent shall be the residential parent when the children are in his or her possession." The agreement also stated that child support "shall be held in abeyance," with the agreement that the trial court would retain jurisdiction to revisit this matter at appropriate times.
 {¶ 6} With respect to arrearages in child support, should they exist, the parties agreed "that a Judgment shall be granted for the amount of such arrearages and the right to such judgment shall not be waived by the failure to ascertain and incorporate any future child support determination into the final decree."
 {¶ 7} On October 21, 2002, Sampson filed the first of several motions to change allocation of parental rights, and a motion to submit the matter to mediation. Weisberg filed a reply to Sampson's motion, which included a request that Sampson be ordered to pay child support. These matters were referred to mediation on November 8, 2002, the result of which was that neither party was able to reach an agreement on these issues.
 {¶ 8} On December 19, 2002, Sampson motioned the court for an order to appoint a guardian ad litem, which was granted, with the court appointing Paula Giulitto to represent the children's interests in this matter.
 {¶ 9} On February 14, 2003, the parties agreed, via judgment entry, to submit to a parenting evaluation to be performed by Dr. Timothy Khol of North East Ohio Behavioral Health, and to allow the children to be involved in the evaluation proceedings, if deemed appropriate by Dr. Khol.
 {¶ 10} The matter came for a hearing before the magistrate on May 14, 2003. On May 22, 2003, the magistrate issued his decision, finding, in relevant part, that custody should be modified only to the extent that Sampson receive additional time with the children on Wednesday evenings, and ordering both parents to attend parenting classes within six months and file proof of completion with the court. In addition, the magistrate found that Sampson had recently quit his job to become a full-time farmer, and that he was earning $29,000 per year prior to leaving his employment. As a result, the magistrate concluded that Sampson was voluntarily underemployed, imputed his prior income as reasonable income for the purposes of calculating his child support obligation, and ordered that Sampson pay $218.92 in child support per month.
 {¶ 11} On June 12, 2003, Weisberg filed objections to the magistrate's decision. After dismissing his attorney and receiving leave to plead or otherwise respond to Weisberg's objections, Sampson filed a pro se response to Weisberg's objections and registered his own objections to the magistrate's decision on June 27, 2003.
 {¶ 12} On September 25, 2003, Sampson filed a second motion to modify custody, alleging that Weisberg's move of the children from the Southeast Local School District was not in the best interest of the children.
 {¶ 13} On October 17, 2003, a hearing was held on the parties' objections to the magistrate's May 22, 2003 decision. On the same date, Weisberg filed a motion for an in camera interview of the children with respect to their wishes relative to Sampson's second motion to modify custody.
 {¶ 14} On November 14, 2003, following a hearing, the magistrate filed a decision denying Sampson's second motion to modify custody.
 {¶ 15} On December 19, 2003, the trial court filed a judgment entry in relation to the magistrate's May 22, 2003 decision on Sampson's first motion to modify custody, affirming the Magistrate's decision in full and establishing child support in the amount of $218.92 per month, effective retroactive the date of the magistrate's decision.
 {¶ 16} Sampson timely filed a notice of appeal to the court's December 19, 2003 decision.
 {¶ 17} On February 11, 2004, Sampson filed a motion for change in allocation of parental rights, alleging that the court's declaration that Hannah was of sufficient reasoning ability to understand and relate her wishes with regard to custody constituted a change in circumstances, from the time of the court's prior order which justified modification of the court's prior order. On the same date, Sampson filed a motion with the court requesting an in camera interview for Hannah.
 {¶ 18} On May 10, 2004, Sampson voluntarily dismissed his appeal with this court. On August 10, 2004, Sampson filed another motion for change in allocation of parental rights, alleging similar grounds as his February 11, 2004 motion. Weisberg filed a memorandum in opposition to this motion on August 18, 2004.
 {¶ 19} On September 22, 2004, the trial court reappointed Giulutto as guardian ad litem, ordered further evaluations related to Sampson's motion and ordered an in camera interview of both children prior to additional hearings on the matter.
 {¶ 20} On November 9, 2004, the magistrate issued the following findings after conducting an in camera interview with the children. The magistrate found, in relevant part, as follows: that Hannah was of sufficient age and reasoning ability to express her wishes and concerns as to the allocation of parental rights and responsibilities, but that Donny was not; that Hannah expressed a desire to live with her father, but did not want to be separated from her brother; that the guardian ad litem indicated Donny wanted to remain with his mother, and, for the time being, recommended that the children not be separated. After making these findings, the magistrate concluded that based upon the close relationship of the children, they should remain together with their mother at this time. Sampson timely filed objections to the magistrate's decision on November 23, 2004. On December 3, 2004, just prior to a hearing on the matter, Weisberg filed her responses to Sampson's objections.
 {¶ 21} On January 5, 2005, following a hearing, the magistrate issued a decision denying Sampson's motion for reallocation of parental rights and responsibilities. In reaching his decision, the magistrate incorporated, by reference, the findings of his November 9, 2004 decision by reference. The magistrate concluded that, while Weisberg had completed her court-mandated parenting skills class, Sampson had not. The magistrate also found that while Sampson's residence currently has running water, it still does not have an indoor commode. Finally, the magistrate determined that Sampson was in willful contempt on the basis of a child support arrearage of $3,389.86 as of November 30, 2004, but provided that Sampson could purge himself of the contempt charge by remaining "substantially current" on his future child-support obligations.
 {¶ 22} Sampson timely filed objections to the magistrate's decision denying his motion to reallocate parental rights on January 19, 2005. A hearing was held on Sampson's objections on April 14, 2005. Following the hearing, the trial judge entered judgment adopting the magistrate's decisions of November 9, 2004, and January 5, 2005, overruling Sampson's objections on the basis of the failure to submit a transcript of the proceedings.
 {¶ 23} Sampson timely appealed the trial court's April 14, 2005 judgment, assigning the following as error:
 {¶ 24} "[1.] The Trial Court abused its discretion in denying the Appellant's motion to reallocate the primary residence of the minor children to the Appellant.
 {¶ 25} "[2.] The Trial Court's [sic] erred in a matter of fact and against the manifest weight of the evidence in determining that the Appellant does not have an `indoor commode.'
 {¶ 26} "[3.] The Trial Court abused its discretion by erring in finding the Appellant in contempt for refusal to pay child support after refusing to hear testimony that the support order was given contrary to law."
 {¶ 27} Since all of Sampson's assignments of error are interrelated, we will proceed to address them collectively. Throughout all three assignments of error, Sampson challenges various factual findings made by the magistrate, argues that the magistrate's findings of fact were against the manifest weight of the evidence, and asserts that the trial court erred by adopting the magistrate's decisions. Sampson further argues that the trial court erred by adopting the magistrate's decision denying his motion to reallocate parental rights and responsibilities, since the decision relied upon an incorrect legal standard. For the reasons that follow, we disagree.
 {¶ 28} Decisions of a trial court involving the care and custody of children are accorded great deference upon review.Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v.Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citations omitted). The highly deferential abuse of discretion standard is particularly appropriate in child custody cases, since the trial judge is in the best position to determine the credibility of the witnesses and there "may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." Wyatt v. Wyatt, 11th Dist. No. 2004-P-0045, 2005-Ohio-2365, at ¶ 13 (citation omitted). In so doing, a reviewing court is not to weigh the evidence, "but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court." Clyborn v.Clyborn (1994), 93 Ohio App.3d 192, 196.
 {¶ 29} We note, at the outset, that Sampson raised objections to the magistrate's decisions of November 9, 2004, and January 5, 2005, based upon Civ.R. 53. With respect to the form of objections, the rule provides that "[o]bjections shall be specific and state with particularity the grounds of objection." Civ.R. 53(E)(3)(b). Pursuant to this requirement, the rule further requires that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact." Civ.R.53(E)(3)(c). This court has interpreted this rule to require a party challenging the magistrate's findings of fact to submit the requisite transcripts to the trial court. Hromulak v. Cheraso, 11th Dist. No. 2002-L-065, 2003-Ohio-1422, ¶ 12, citing Williams v. Williams
(Sept. 29, 2000), 11th Dist. No. 99-A-0008, 2000 Ohio App. LEXIS 4554, at *13; Jones v. Simondis (Mar. 27, 1988), 11th Dist. No. 97-T-0073, 1998 Ohio App. LEXIS 1210, at *9 (if the objecting party does not submit the requisite transcript of affidavit, he is precluded from arguing on appeal that the magistrate's factual findings were against the manifest weight of the evidence) (citations omitted).
 {¶ 30} Here, the record reveals that, while Sampson timely objected to both of the magistrate's decisions, he did not provide a transcript for the trial court's review.[1]
Accordingly, the extent of our review "is limited to whether the trial court abused its discretion in adopting the report."Hromulak, 2003-Ohio-1422, at ¶ 12 (citation omitted). In the absence of a transcript from the magistrate's hearing, the scope of a trial court's review of the factual findings in a magistrate's decision "is limited to determining whether those findings are sufficient to support * * * the conclusions of law" reached by the magistrate. In re Estate of Thut, 11th Dist. No. 2004-L-138, 2005-Ohio-4647, at ¶ 28 (citation omitted). In other words, as an appellate court, we will only reverse if we find the trial court adopted the magistrate's decision when there was clear error of law or other defect on its face. Civ.R. 53(E)(4)(a); Williams, 2000 Ohio App. LEXIS 4554, at *14; see also Hromulak, 2003-Ohio-1422, at ¶ 13. ("[W]hile the trial court can ignore appellant's objections to the magistrate's decision in the absence of a transcript, this court must still engage in a rule of law analysis").
 {¶ 31} Based on Sampson's failure to properly object by providing a transcript to the trial court, we hold that the trial court did not abuse it's discretion by adopting the magistrate's factual finding that Sampson's home lacked an "indoor commode."
 {¶ 32} This conclusion is further supported by our review of the record, which indicates that the issue of the sanitary facilities in his house was initially raised and litigated following Sampson's first motion to reallocate parental rights and responsibilities filed in October of 2002, when these issues were raised on a prior appeal, which was subsequently voluntarily dismissed.
 {¶ 33} Following a hearing on Sampson's first motion to reallocate parental rights and responsibilities, the magistrate issued his decision on May 22, 2003. The magistrate found, in relevant part, as follows:
 {¶ 34} "The father should not have the children staying in sub-standard housing * * *. Both parties should attend parenting classes within the next six months, (from May 22, 2003) * * * and file proof of completion with the Court."
 {¶ 35} Following objections to the magistrate's findings,[2] and a hearing on these objections, the trial court, in adopting the magistrate's findings, ordered that the children, when staying with their father, were to "sleep in the residence" of Sampson's mother, which was located on the family farm, approximately 100 yards Sampson's home. This order was journalized and made part of the record on December 19, 2003.
 {¶ 36} Although Sampson timely appealed the trial court's judgment entry adopting the first Magistrate's decision on January 19, 2004, he subsequently voluntarily dismissed his appeal, presumably since the trial court was divested of jurisdiction to address his subsequently filed motions to reallocate parental rights and responsibilities. See State exrel. Florence v. Zitter, 106 Ohio St.3d 87, 2005-Ohio-3804, at ¶29 ("once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment") (citation omitted). Under App.R. 28, a dismissal will always be with prejudice. Marino v. Painter, 11th Dist. No. 2003-T-0133, 2004-Ohio-6033. at ¶¶ 19-20 (citations omitted). Thus, any issues raised which could have been addressed in the voluntarily dismissed appeal are deemed waived, and are barred from subsequent litigation by the doctrine of res judicata. Id.
 {¶ 37} A review of the record demonstrates that the trial court's order granting child support was likewise part of the aforementioned December 19, 2003 judgment, which Sampson appealed and subsequently dismissed. Thus, for the same reasons as above, Sampson's argument that the trial court erred by adopting the magistrate's decision which found that Sampson was "voluntarily underemployed" and imputing income of $29,000 for the purpose of calculating his child support obligation, is also barred by the doctrine of res judicata.
 {¶ 38} Furthermore, we conclude, based upon a review of the record, that the trial court's adoption of the magistrate's decision ordering Sampson to pay child support constituted a modification of child support expressly allowed by the terms of the shared parenting agreement. Thus, the trial court's adoption of the magistrate's decision granting a modification in support and calculating the amount of child support due satisfied Civ. R. 53 and was a final appealable order. Berthelot v. Berthelot,
9th Dist. C.A. No. 22819, 2006-Ohio-1317, at ¶ 21; see alsoCundiff v. Cundiff (Aug. 31, 2000), 4th Dist. No. 00CA8, 2000 Ohio App. LEXIS 4092. at *2 (motions to modify custody, child support, or for contempt are classified as special proceedings and judgments on such motions are final and appealable when made). Since Sampson could have raised the issue of the child support modification in his prior appeal but did not, he is now barred from doing so in a subsequent appeal by the doctrine of res judicata. In re Julius H., 6th Dist. No. L-01-1408, 2002-Ohio-394, 2002 Ohio App. LEXIS 332, at *3. Here, Sampson does not dispute that he made no support payments subject to the court's earlier order. Accordingly, the trial court did not err by adopting the magistrate's decision finding Sampson in contempt.
 {¶ 39} While we are mindful that the results reached here may appear harsh, it is well-settled that "[p]ro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors."Williams, 2000 Ohio App. LEXIS 4554, at *12 (citations omitted); Countrywide Home Loans, Inc. v. Poppy, 11th Dist. No. 2003-L-134, 2004-Ohio-5936, at ¶ 33 n. 1.
 {¶ 40} We now address Sampson's arguments relating to the proper standard the trial court must use when addressing a motion to reallocate parental rights and responsibilities. Sampson alleges that the trial court and the guardian ad litem erred by applying a "change in circumstances" standard, as opposed to employing a "best interest" standard. We disagree.
 {¶ 41} R.C. 3109.04(E)(1)(a) governs modifications of a prior decree allocating parental rights and responsibilities for the care of children. In interpreting this statutory provision, this court has held that "in order for a trial court to modify a prior child custody decree, the party requesting the modification
must demonstrate the following: (1) a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree; (2) the requested modification is necessary to serve the best interest of the child; and (3) one of the three scenarios described in R.C.3109.04(E)(1)(a)(i) through (iii) is applicable." In re Seitz,
11th Dist. No. 2002-T-0097, 2003-Ohio-5218, at ¶ 36, citingPickett v. Pickett, 11th Dist. No. 2001-L-136, 2002-Ohio-3128, at ¶ 15; Loudermilk v. Lynch, 11th Dist. Nos. 2002-A-0044 and 2002-A-0045, 2004-Ohio-5299, at ¶ 19.
 {¶ 42} As a general rule, then, "the trial court may not modify a prior decree allocating parental rights and responsibilities unless it first finds a change has occurred in the circumstances of the child or his residential parent; and then, upon further inquiry, the court finds that the modification is in the child's best interests." Lehman v. Lehman (Feb. 28, 1997), 11th Dist. No. 95-T-5327, 1997 Ohio App. LEXIS 716, at *8, citing Clyborn, 93 Ohio App.3d at 195; R.C. 3109.04(E)(1)(a). Thus, the court should proceed to a best interest analysis onlyafter the court has determined that a change in circumstances has occurred. Id. (citation omitted). This initial change in circumstances determination is meant to serve as a "barrier that must be hurdled before inquiry can be made on those issues affecting the best interest of the child." Perz v. Perz (1993),85 Ohio App.3d 374, 376. The change in circumstances of the child or the residential parent must be based upon facts arising since the prior decree or from facts unknown at the time of the prior decree. Moyer v. Moyer (Sept. 24, 1992), 10th Dist. No. 92AP-27, 1992 Ohio App. LEXIS 4897, at *5-*6. This barrier is meant to operate as the "domestic relations version of the doctrine of res judicata," and is meant to prevent the "constant relitigation of the same issues" adjudicated in prior custody orders. Perz, 85 Ohio App.3d at 376. The change in circumstances must be significant to the question of custody
before a best interest inquiry is performed. Id. (Emphasis added).
 {¶ 43} Furthermore, a change in custody analysis normally creates a rebuttable presumption in favor of the custodial parent retaining custody unless the change is one which would have a "material and adverse effect upon the child." Elam v. Elam
(Dec. 10, 2001), 12th Dist. No. CA2001-02-028, 2001 Ohio App. LEXIS 5472, at *8, citing Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599, 604-605; R.C. 3109.04(E)(1)(a)(iii). Therefore, it necessarily follows that the burden is on the party seeking a change in custody to demonstrate sufficient indicia of the three factors to rebut this presumption and justify a modification.Wyss v. Wyss (1982), 3 Ohio App.3d 412, 414; Serwicki v.Serwicki (May 22, 1987), 6th Dist. No. L-86-200, 1987 Ohio App. LEXIS 7074, at *5.
 {¶ 44} In the instant matter, the separation agreement attached to the final decree of divorce provided that "the primary residence of the children shall be with the Wife," and that "the parties further agree that the Husband shall have liberal rights of companionship which will not fall below the Standard Orders of Visitation as set forth by the Domestic Relations Court." Thus, Weisberg is the custodial parent according to the decree of divorce. See e.g. Braatz v. Braatz,85 Ohio St.3d 40, 44, 1999-Ohio-203 ("`Visitation' and `custody' are distinct legal concepts. `Custody' resides in the party or parties who have the right to ultimate legal and physical control of the child. `Visitation' resides in a noncustodial party and encompasses that party's right to visit the child. In other words, `visitation' is granted to someone who does not have `custody'"). Therefore, Sampson, as the non-custodial parent, bears the burden of demonstrating that there has been a change in circumstances before the court is required to engage in a best interest analysis.
 {¶ 45} Depending on the age and maturity of the child, a trial court "may properly consider the child's wishes when determining whether a change in circumstances has occurred."Wangugi v. Wangugi (Apr. 12, 2000), 4th Dist. No. 99 CA 2531, 2000 Ohio App. LEXIS 1675, at *12-*13 (citations omitted). "[T]his court has repeatedly held that the election of a child to live with the non-custodial parent constitutes a change under R.C. 3109.04." Schiavone v. Antonelli (Dec. 10, 1993), 11th Dist. No. 92-T-4794, 1993 Ohio App. LEXIS 5891, at *14. Thus, according to this court's precedent, Sampson has demonstrated a change in circumstances. Nevertheless, the child's wishes do not obviate the need to conduct a best interest analysis in which the child's wishes are but one of many factors which the trial court must consider. Id at *16 (citation omitted).
 {¶ 46} Under R.C. 3109.04(F)(1), the court is required to consider "all relevant factors" including, among others: (1) the wishes of the parents; (2) the wishes of the children; (3) the children's relationship with the parents, siblings, and others significantly affecting the child's best interest; (4) the child's adjustment to home, school, and community; (5) the mental and physical health of all parties; (6) the parent most likely to honor and facilitate court-approved parenting, visitation, and companionship rights; and (7) any failure of a parent to promptly pay a child support payment, when required to do so by the courts. Since the statute dictates that all relevant factors are to be considered, a trial court will not err by considering reports from the guardian ad litem or a psychologist as part of the best interest analysis. Manis v. Manis (Aug. 22, 1997), 11th Dist. No. 96-P-0200, 1997 Ohio App. LEXIS 3784, at *15. It is well settled that "the role of the [guardian ad litem] is to investigate the child's situation and to ask the court to do what the guardian believes is in the child's best interest." Pathanv. Pathan (Sept. 15, 2000), 2nd Dist. No. 18254. 2000 Ohio App. LEXIS 4258, at *15, citing In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 232; In re Day (Feb. 15, 2001), No. 00AP-1191, 2001 Ohio App. LEXIS 525, at *22.
 {¶ 47} Sampson argues that the magistrate's reliance on the guardian ad litem's recommendation that the children should not be separated was error. Specifically, he appears to challenge the guardian ad litem's alleged reliance on Donny's wishes, after the court conducted an in camera interview with both children and declared Donny of insufficient age and reasoning ability to express his wishes and concerns.
 {¶ 48} Sampson points to what he deems as inconsistencies between the guardian ad litem's reports relating the children's wishes and the magistrate's ultimate findings, yet he has failed to include the guardian ad litem report in the record transmitted on appeal, as required by App.R. 9. See Jagusch v. Jagusch, 9th Dist. No. 02CA0036-M, 2003-Ohio-243, at ¶ 35. This, coupled with Sampson's aforementioned failure to present the trial court with a copy of the transcript of the proceedings before the magistrate, requires us to presume the regularity of the proceedings below and affirm the trial court's decision. Id. citing Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199.
 {¶ 49} Furthermore, we cannot conclude that, based upon the record before us, the trial court failed to consider Hannah's wishes. Following an in camera interview to which both the parties consented, the magistrate acknowledged Hannah's desire to live with her father, but also noted that Hannah does not wish to be separated from her brother. Sampson not only appears to acknowledge this fact, but agrees that it would not be in their best interest to separate the children. Sampson appears to argue that, but for Donnie's wishes, which the trial court improperly considered, Hannah's wishes should control. However, this court has explicitly stated that "the trial court cannot base its decision as to best interest solely upon the children's wishes unless there are other factors supporting that choice."Schiavone, 1993 Ohio App. LEXIS 5891, at *16 (emphasis sic).
 {¶ 50} In the case sub judice, the magistrate based his decision not only on Hannah's express wishes, but also on the guardian ad litem's recommendation that it was in the children's best interest, at the present time, to remain together in the same household. In conducting the best interest analysis, the magistrate also considered Sampson's own acknowledgment that he did not complete the court mandated parenting skills class and the fact that Sampson had not improved his residence to the point where it would be considered by the court as habitable for the children. We conclude that all of these factors are relevant to the best interest of the children. Accordingly, we hold that the trial court did not abuse its discretion by adopting the magistrate's decision as written, particularly in the absence of a transcript being provided to the trial court.
 {¶ 51} For these reasons, Sampson's assignments of error are without merit. We affirm the judgment of the Portage County Court of Common Pleas, Domestic Relations Division.
O'Neill, J., O'Toole, J., concur.
[1] A review of the record transmitted on appeal reveals that a transcript was eventually filed with the trial court on July 14, 2005, exactly two months after the trial court adopted the magistrate's decision. Thus, we cannot properly consider the contents of this transcript on review, since it was not timely filed in the trial court, and it is the trial court which is the proper forum for initially raising objections to a magistrate's decision. Williams, 2000 Ohio App. LEXIS 4554, at *14 ("Failure to provide an acceptable record to the trial court permits the trial court to ignore any objections to factual matters that may have been challenged."), citing Witt v. J J Home Centers,Inc. (Apr. 26, 1996), No. 95-G-1939, 1996 Ohio App. LEXIS 1703, at *4-*5; see also Mix v. Mix, 11th Dist. No. 2003-P-0124,2005-Ohio-4207, at ¶ 25. (where there is no transcript submitted at the trial court level, an appellate court is restricted to exploring only those matters which are properly contained in the record before it) (citation omitted).
[2] We note, in passing, that the transcript of the hearing of May 14, 2003 was filed as part of Sampson's objections to the Magistrate's decision dated May 22, 2003. Accordingly, the trial court was able to review the record of the facts supporting the magistrate's findings. In adopting the magistrate's findings, the court accepted the following relevant findings of fact with respect to the habitability of Sampson's home, and based upon Sampson's own uncontroverted testimony: that the home lacked its own electrical service, running water, kitchen facilities, and a flush toilet inside the home. Sampson testified that in lieu of a flush toilet, the sanitary facilities consisted of a "composting toilet," located inside one of the open finished rooms, which consisted of a receptacle with a seat, which used sawdust as the composting medium. By Sampson's own testimony, he characterized this as a "temporary measure."