OPINION
{¶ 1} Appellant, Barry M. Brown ("Mr. Brown"), appeals from a judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, in which the trial court overruled objections to the magistrate's decision, terminated its previously ordered shared parenting plan, and named appellee, Jodirae Bates-Brown ("Ms. Brown"), residential parent and legal custodian of the parties' three minor children. *Page 2 
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} The parties were married on September 2, 1989. Three children were born of this marriage: Dalton (born on August 2, 1992); Dylan (born on September 10, 1996); and Dawson (born on June 15, 2000). On December 29, 2003, Ms. Brown filed her complaint for divorce. The court appointed a guardian ad litem (GAL) to represent the interests of the children.
 {¶ 4} On November 23, 2004, the court held a hearing on Ms. Brown's complaint for divorce. The parties entered into an in-court agreement in which they agreed, inter alia, to a shared parenting agreement. Under the terms of the agreement, the boys were to reside primarily with Ms. Brown. However, Mr. Brown was provided parenting time for three consecutive weekends from Friday through Monday morning. After the fourth weekend, the children would sleep overnight at their father's residence on Tuesday evenings. The order granting the divorce, which incorporated the shared parenting plan, was journalized on January 6, 2005.
 {¶ 5} On March 9, 2005, Mr. Brown filed a motion for an ex parte restraining order and order of possession and temporary custody of the minor children on the ground that Ms. Brown was convicted of a DUI offense and was sentenced to a jail term of sixty days. The court granted Mr. Brown's motion, but subsequently vacated the motion after Ms. Brown was released from prison on March 18, 2005.
 {¶ 6} On April 8, 2005, Mr. Brown filed a motion for termination of the shared parenting plan and asked to be named the residential parent. Prior to the hearing on this motion, Mr. Brown filed several other motions, including a post-decree motion for relief from judgment and a post decree motion for emergency ex parte order to have *Page 3 
their youngest son, Dawson, re-enrolled in kindergarten. The court denied both motions.
 {¶ 7} On January 13, 2006, the court held an evidentiary hearing on Mr. Brown's motion to terminate the shared parenting plan. The court heard the testimony of both parties, the maternal grandmother, and the GAL.
 {¶ 8} At the hearing, Mr. Brown testified that as part of the divorce he retained the marital home and Ms. Brown moved into a condominium. Mr. Brown further testified that his oldest son, Dalton, moved in with him in November 2005 and that his other children wanted to be together and to live with him as well. He testified that he believed it was important for his sons to reside together. Although Mr. Brown testified that he has a girlfriend who interacts with his children, he stated that his children do not like to be around Ms. Brown's boyfriend, who is married. On cross-examination by the GAL, Mr. Brown testified that he had discussed with his sons the fact that their mother's boyfriend was "black or African-American." When asked by them whether interracial dating was "normal," Mr. Brown told his sons that "we never experienced that in our family * * * it's different." Mr. Brown also testified that he had observed Ms. Brown drinking excessively, but then admitted that he never personally witnessed this.
 {¶ 9} Ms. Brown testified that while she did not consent to Dalton's living with his father, and while she wants all three boys to reside with her, she would not force Dalton to move out of his father's home. In fact, she stressed that she would never prevent the boys from seeing their father. However, she testified that it would not be in the boys' best interest to be divided between their parents. Ms. Brown further testified that she believed the reason why their children may have expressed a desire to live with their father is because she is the disciplinarian and it is consequently more fun at their *Page 4 
father's house. In her opinion, Dalton's grades, which had slipped, remained about the same since he moved in with his father. Ms. Brown further testified that she and Mr. Brown were incapable of making joint decisions and that they had relied upon Dr. Neuman, a psychologist, to facilitate conflicts.
 {¶ 10} Sandra Lee Bates, Ms. Brown's mother, testified that she arrives at her daughter's condominium every morning at 6:45 a.m. to make sure that the boys get off to school. She also testified that the boys seem comfortable in the condominium.
 {¶ 11} GAL, Elise Burkey, testified that prior to the filing of the motion she had met numerous times with Mr. Brown. However, she did not meet with Mr. Brown since the motion was filed. She recalled that Mr. Brown called her office one or two times and had canceled an appointment. The GAL was unaware whether he ever made any other appointment with her office. Mr. Brown, did, however, call her office and fax her documents pertaining to the issue of whether their youngest son should remain in kindergarten. The GAL testified that she had spoken with Ms. Brown over the phone about five times. She also stated that the two older children expressed their desire to live with their father because they had "more fun over there."
 {¶ 12} On February 24, 2006, the magistrate issued his decision terminating the shared parenting plan and naming Ms. Brown the residential parent. On that same date, the trial court adopted the magistrate's decision. On March 10, 2006, Mr. Brown filed objections to the magistrate's decision and later filed supplemental objections. On July 13, 2006, the trial court overruled the objections and upheld the magistrate's decision. Mr. Brown timely filed the instant appeal, raising three assignments of error for our review: *Page 5 
 {¶ 13} "[1.] The trial court erred when it relied upon the report of a guardian ad litem that [sic] did not adequately perform her duties as required by Ohio Revised Code 3109.04(C) as she failed to meet with appellant during the pendency of his motion for termination and exclusive allocation of parental rights and responsibilities or in the alternative to modify the shared parenting plan.
 {¶ 14} "[2.] The trial court erred when it allowed the Guardian as [sic] Litem to submit her Report and Recommendation one month after the conclusion of the trial thus denying Appellant the opportunity to cross-examine the Guardian Ad Litem regarding the specific contents of her Report and Recommendation.
 {¶ 15} "[3.] The trial court erred when it considered as evidence the guardian ad litem's testimony and report which incorporated the hearsay statements of a psychologist who did not testify at the trial and whom the appellant had no opportunity to cross-examine."
 {¶ 16} Standard of Review
 {¶ 17} Mr. Brown challenges the trial court's decision overruling his "motion for termination of shared parenting plan and exclusive allocation of parental rights and responsibilities or in the alternative motion to modify shared parenting plan," and objects to various evidentiary rulings made concerning the GAL.
 {¶ 18} We are mindful that decisions involving the care and custody of children are accorded great deference upon review. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of that court's discretion. Davis v. Flickinger (1977), 77 Ohio St.3d 415, 418."Weisberg v. Sampson, 11th Dist. No. 2005-P-0042, 2006-Ohio-3646, at ¶ 28. An abuse of discretion connotes *Page 6 
more than a mere error of law or judgment; rather it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.Measor v. Measor, 160 Ohio App.3d 60, 2005-Ohio-1417, at ¶ 9, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144, and Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} Furthermore, the highly deferential abuse of discretion standard is particularly appropriate in child custody cases, since the trial judge is in the best position to determine the credibility of the witnesses and there "may be much that is evident in the parties' demeanor and attitude that does not translate well to the record."Wyatt v. Wyatt, 11th Dist. No. 2004-P-0045, 2005-Ohio-2365, at ¶ 13. In so doing, a reviewing court is not to weigh the evidence, "but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court." Clyborn v. Clyborn (1994),93 Ohio App.3d 192, 196. Weisberg, at ¶ 28.
 {¶ 20} We also review a trial court's evidentiary rulings under an abuse of discretion standard of review. With respect to evidentiary rulings, "`[t]he trial court has broad discretion in the admission and exclusion of evidence.'" State v. Bentley, 11th Dist. No. 2004-P-0053,2005-Ohio-4648, at ¶ 19, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. Thus, "`[a]n appellate court shall not disturb evidentiary rulings absent an abuse of discretion.'" Id. State v. Montie, 11th Dist. No. 2006-P-0058, 2007-Ohio-2317, at ¶ 13.
 {¶ 21} Adequacy of GAL's Report Submission of ReportPost-Hearing
 {¶ 22} In his first and second assignments of error, Mr. Brown contends that the trial court abused its discretion by permitting the GAL to submit her report one month after the hearing, thus denying him of his right to cross-examination. He further argues that the trial court erred in relying on the report because the report itself was deficient. *Page 7 
Specifically, Mr. Brown stresses that the GAL failed to meet with him prior to writing the report; thus, the GAL failed to perform a sufficient investigation and did not adequately fulfill her statutory duties under R.C. 3109.04(C).
 {¶ 23} At the outset, there is no indication that the trial court did in fact consider the GAL's report in rendering its decision. Rather, the court expressly stated in its entry that its decision was based upon "the testimonies that the parties are unable to communicate with each other. Communication being an important part of any shared parenting plan, the current shared parenting plan shall be terminated." The court then conducted a best interest analysis under R.C. 3109.04(F)(1) and determined that "the best interest of the children would be served by plaintiff being the residential parent and legal custodian of all three children." Under these circumstances, we reject Mr. Brown's arguments since there is no showing that the court actually considered and relied upon the GAL's report.
 {¶ 24} We also reject Mr. Brown's argument that he was deprived his due process rights and the right to effectively cross-examine the GAL where the GAL failed to provide the parties with a copy of her written report prior to trial. Specifically, Mr. Brown argues that the failure to make the report available and to permit proper cross-examination is reversible error. In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368;Collins v. Collins (1984), 324 S.E.2d 82. See, also, In re: Seitz, 11th Dist. No. 2002-T-0097, 2003-Ohio-5218, at ¶ 27, where we stated "that a court errs when it receives testimony in the form of a guardian ad litem's report, but does not allow the parties to cross-examine the guardian ad litem regarding the contents of the report."
 {¶ 25} Again, since there was no indication that the trial court's decision was based upon the GAL report, this argument lacks merit. Moreover, pursuant to R.C. *Page 8 3109.04, it is incumbent upon the party seeking the report to make a written request. R.C. 3109.04(C) specifically provides that:
 {¶ 26} "Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigations and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon writtenrequest. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report." (Emphasis added.)
 {¶ 27} In this case, neither Mr. Brown nor his counsel made a written request for a GAL report. Therefore, Mr. Brown has effectively waived his right to complain that the written report was untimely. SeeWilburn v. Wilburn, 169 Ohio App.3d 415, 2006-Ohio-5820, at ¶ 32-33.
 {¶ 28} Furthermore, we find that Mr. Brown's reliance on theHoffman decision is misplaced. As we noted in Jackson v. Herron, 11th Dist. No. 2003-L-145, 2005-Ohio-4046, at ¶ 20, the Hoffman decision is distinguishable in that involved a termination of parental rights, which differs fundamentally from an allocation of parental rights and responsibility or custody action. Unlike a custody action, in which the non-custodial parent still has the right of visitation, a proceeding to terminate parental rights "has been referred to as `the family law equivalent of the death penalty.'" Id. citing In re Hayes (1997),79 Ohio St.3d 46, 38. As such, "the parent in a `termination' proceeding must be given every procedural and substantive protection under the law * * *." In re: Salsgiver, 11th Dist. No. 2002-G-2477, 2003-Ohio-1206, at ¶ 29, citing Hoffman. *Page 9 
Another distinction is that in Hoffman, the Supreme Court of Ohio was interpreting R.C. 2151.41 and 2151.414(C), which require the submission of a GAL report prior to or at the time of the hearing, in contrast to R.C. 3109.04, which places the burden upon the party to request a report.
 {¶ 29} In addition, Mr. Brown was not denied his right to cross-examine the GAL. In fact, the record demonstrates that after the GAL summarized her position verbally that she believed the children should reside with their mother Mr. Brown's counsel then had the opportunity to and did in fact cross-examine the GAL regarding her investigation and the basis of her recommendations. Mr. Brown can hardly claim he was not afforded the right to fully and effectively cross-examine the GAL regarding her recommendations.
 {¶ 30} Mr. Brown further argues that the GAL did not fulfill her statutory duties because she failed to interview and meet with him during the pendency of the motion. R.C. 3109.04(C) requires an investigator to investigate the character, family relations, past conduct, earning ability, and financial worth of each parent. Although the GAL did not meet personally with Mr. Brown during the pendency of the motion, she did converse with him by phone on at least one occasion (regarding the issue of whether to de-enroll the parties' youngest son from kindergarten.) The evidence also establishes that she had met with Mr. Brown "countless times prior" to the filing of the motion and that the trial court's original determination and acceptance of the shared parenting plan was finalized just three months prior to the filing of the instant motion.
 {¶ 31} In order for a reviewing court to overturn a decision based upon an allegation of misfeasance on the part of a GAL, the complaining party must establish prejudice. Seitz at ¶ 32. "[W]hen a parent cannot establish any prejudice arising from the action or non-action of a guardian ad litem, then any potential error constitutes *Page 10 
harmless error." In re: J.C., 4th Dist. No. 07CA833, 2007-Ohio-3781, at ¶ 13. Because the GAL had met with Mr. Brown on several occasions in the near past and since she was very familiar with the family and interplay between the family members, we are unwilling to conclude that Mr. Brown was prejudiced by her failure to meet with him face-to-face during the pendency of the instant motion. While the better practice would have been for the GAL to have had direct contact with Mr. Brown during the pendency of the motion, the failure to do so does not constitute misfeasance nor does it rise to the level of reversible error, as Mr. Brown suggests. We find that the GAL's investigation was sufficient to support her conclusions.
 {¶ 32} We overrule the first and second assignments of error.
 {¶ 33} Reliance on Hearsay Statements of Psychologist in GAL Report Testimony
 {¶ 34} In his third assignment of error, Mr. Brown contends that the trial court erred in considering the GAL's testimony and report that relied upon the improper hearsay statements of psychologist, Dr. Neuman. In particular, Mr. Brown objects to the fact that the trial court allowed the GAL to state that she "had numerous conversations" with Dr. Neuman and that her recommendation that Ms. Brown be named the residential parent was based upon these discussions.
 {¶ 35} The "statements" Mr. Brown objects to were made in the GAL's oral report to the court. When Mr. Brown's counsel objected to the GAL's reference to Dr. Neuman, the court replied that: "Well, I think the Guardian Ad Litem has an obligation to seek whatever information she can from whatever source." The trial court further stated that it was permissible for the GAL to testify that her recommendations were based on the conversations she had with Dr. Neuman. *Page 11 
 {¶ 36} We agree with the trial court. "A guardian ad litem has been described as performing a dual role of 1) advocating for the child's interests and 2) serving as a fact finder for the court." Seitz
at ¶ 31. In performing these functions, the GAL is deemed "an investigator for the court within the meaning of R.C. 3109.04(C). Webb v. Lane (Mar. 15, 2000), 4th Dist. No. 99CA12, 2000 Ohio App. LEXIS 1077, at 2. The role of the GAL is to investigate the ward's situation and then make a recommendation to the trial court * * *." In re: Sherman, 3d Dist. Nos. 5-04-47, 5-04-48, 5-04-49, 5-04-50, 2005-Ohio-5888, at ¶ 28. Because one of the responsibilities of the GAL is to provide the court with an independent evaluation of the issues, including what custody arrangement is in the child's best interests, the GAL's recommendation "should not be based on the testimony given at the hearing, but on the guardian's own experience in the case." In re: Ridenour, 11th Dist. Nos. 2003-L-146, 2003-L-147, 2003-L-148, 2004-Ohio-1958, at ¶ 25.
 {¶ 37} This is precisely what the GAL did in this case. She took into account what the psychologist recommended and after completing her own investigation rendered her opinion, which was incidentally in accord with Dr. Neuman's recommendation. We find that the GAL acted appropriately, and the trial court did not abuse its discretion in allowing the GAL to explain how she arrived at her conclusion that it was in the children's best interest to live with their mother.
 {¶ 38} Furthermore, Mr. Brown's counsel opened the door to the opinions rendered by Dr. Neuman earlier in the trial during his cross-examination of Ms. Brown. Counsel asked Ms. Brown questions about her boyfriend and whether Dr. Neuman advised her to keep her children away from him. Ms. Brown asked the court whether she could discuss what Dr. Neuman said to her, and the court replied affirmatively. Mr. *Page 12 
Brown cannot have it both ways. He cannot use Dr. Neuman's opinion only where it suits his case.
 {¶ 39} With respect to the GAL report, even if the trial court had relied upon the GAL's written report, which it apparently did not, "a guardian ad litem report can be considered by the trial court, despite any hearsay contained in the report, as long as the parties' due process rights are protected, which essentially require that the trial court make the guardian ad litem available for direct and cross examination."Bauer v. Bauer, 4th Dist. No. 06CA2, 2006-Ohio-7096, at ¶ 28. InBauer, the court found no abuse of discretion where the guardian not only submitted a report but also testified at trial and was subject to full cross examination. Id. at ¶ 29. Likewise, the GAL in this case was present at the hearing and was subject to full cross-examination. Mr. Brown's arguments lack merit.
 {¶ 40} We overrule the third assignment of error.
 {¶ 41} The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
 DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur. *Page 1